For Mr. Prewitt as appellant, we have Mr. Charles Kotube, is that pronounced correctly? Yes, it is. Hearing pro bono, which we appreciate, and for appellees we have Peter Edlund. Thank you. So please proceed. May it please the Court, my name is Charles Kotube, Jr. I'm pro bono counsel for plaintiff appellant Rex Allen Prewitt. In this matter, I'd like to reserve one minute for approval, please. I'd like to start off by taking no more than a minute to a minute and a half of this Court's time to go through the order of proof in a 1983 action alleging violation of an Eighth Amendment right. A court evaluating a claim must first take the plaintiff's allegations as true and determine whether he has alleged a violation of an actual constitutional right. Well, has he in this case? Pardon me, Your Honor? Has he in this case? Why don't you take it step by step? I will. With the facts, Your Honor? The Court in this case, the Court in this case below, kicked out the grand summary judgment at this stage of the process, holding the plaintiff had not alleged a violation of an actual constitutional right in this instance. In situations such as this, an Eighth Amendment claim where a subjective component is integral to the constitutional violation, the Supreme Court in Crawford L. was clear that the plaintiff need not plead clear in convincing evidence at the pleading stage, but was nonetheless put forth specific facts and affirmative evidence to show that a reasonable jury could hold that he has carried his burden as to proving the pertinent motive. That pertinent motive here is subjective recklessness. If the defendant's officials plead qualified immunity, the Court must then proceed to determine whether that right was so clearly established that it would be clear to a reasonable officer in a situation that the conduct he engaged in was against the law. This determination is necessarily fact-specific. This Court held in a State of Ford not too long ago that to carry the burden of showing qualified immunity, a burden which the defendant officials hold here, they must show that a reasonable officer would not have known of the plaintiff's particular circumstance or would not have appreciated the harm that would result from ignoring that particular circumstance. If immunity is denied, defendants can still win on summary judgment by showing affirmative evidence, specific facts, that refute the plaintiff's claim as to the state of mind. At that point, if the Court has two reasonable inferences on this point, it must accept that most favorable to the nonmoving party, plaintiff here. Defendants may win on summary judgment at that stage only if their conduct was objectively reasonable based on undisputed facts or so one-sided that they must prevail as a matter of law. As I said before, the Court below said that Plaintiff here had not alleged a constitutional violation. However, this case presents a classic example of an Eighth Amendment violation for the denial of medical treatment to a prisoner, a violation that has been well known to the Supreme Court and the Supreme Court for nearly three decades, as this Court is well aware that the Eighth Amendment requires an objective and subjective component. Kennedy. With the denial in this case, I guess, consists primarily of the failure to give the pills through the night. Correct. Correct. That is the degree that taking away the pillows and the equipment. And equipment and the physical therapy devices. The primary, the primary constitutional. How does this tie into the cases? How do these facts tie into the cases to establish a violation of constitutional right? The primary constitutional violation here, you're correct, Judge Schwartz, is the denial of the medication through the night. The doctor in this case prescribed medication every four hours around the clock. He got the medication. What's the best case you have on the front? The best case we definitely have is this Court's decision in Hamilton. It was a 1993 case. In that case, in Hamilton, a prison inmate underwent ear surgery. And his treating physician ordered him not to fly for at least six months. One month later, the defendant officials got the opinion of a prison doctor who cleared him for flight. They put him on a flight. One month after surgery, he suffered severe pain. This Court held that the plaintiff there had a serious medical need after ear surgery and that the defendants were deliberately indifferent or reckless to that need. Those facts apply here as well. Here, the defendant, the plaintiff had a serious medical need after a gunshot wound to the shoulder and two surgeries on his shoulder, his hand and his hip. The plaintiff's physician prescribed medication around the clock every four hours, as well as certain devices such as elevation pillows, bed pads for his comfort, and physical therapy devices to alleviate his pain and speed his recovery. Defendants knew of this pain, knew of the prescriptions, yet deliberately ignored both, similar to the Court's, this Court's decision in Hamilton. I think Hamilton is the most on point here. Taking first the objective component of the Eighth Amendment, the plaintiff must allege that he has a serious medical need. This Court in McGuckin v. Smith was very clear that a meant that if the plaintiff has an injury of which a physician has prescribed treatment, that is a concrete indication that he has satisfied the objective test of the Eighth Amendment. Moving on to the subjective component, this the Supreme Court in Farmer v. Brennan was very clear that deliberate indifference under Estelle is nothing more than subjective recklessness. That standard will be met if the defendant officials know of a, of an injury. Yes. In this instance, is your position that there are no circumstances under which the way the prison, the prison official's refusal to give nighttime medication could be constitutionally valid, or that they simply haven't given any reasons for doing this? My position would be that that is correct as to the first prong of the analysis, that on the complaint as it's pled, we have a constitutional violation here. I think your question goes to the second element more specifically, which is whether their action was objectively reasonable.  In other words, I'm asking you, suppose they put on a defense which I don't see, or an explanation which doesn't seem to exist on the current record at this point, to the effect that we have a terribly violent group of people here, and we need to have one guard, you know, in charge of each of them, and there's no way we can have somebody leave to get the medication, and of course if this was life-threatening medication we would get it, but if it was simply a matter of more or less pain, it's just something given the terrible circumstances in this prison we absolutely can't do. I mean, I'm not sure what those circumstances would be, but if they had an explanation related to their penal interest that was supervening, is there no way that this would be constitutional? I think that is correct. I think the Eighth Amendment has been the court, the cases under the Eighth Amendment are very clear here that the failure to follow a doctor's prescription will allege a constitutional violation on the facts as they are put forth. But anyway, here we don't have anything but a very vague argument. We have a very vague. They put forth that they were at all times following jail policy in this case, and I see that as going to the argument that they were acting objectively reasonable in this situation by relying on this jail policy. However, the most significant point here is if we find that they were acting reasonably by dispensing medication four times a day under the jail policy, we must also find that they were acting unreasonably by failing to follow a sane provision of that – a similar provision to that sane policy which required medication to be dispensed at the prescribed dosage at the prescribed time. There's nothing that the Court can do. Kennedy, was there a point in the litigation where the matter of the penal interest that justified what the – which the defendants sought to justify their actions? Would that – when does that come into play? That would come into play at the second stage, whether their conduct was objectively reasonable under the circumstances. You're saying it comes into play in the consideration of whether there's qualified immunity? Exactly, Your Honor. It comes into play on whether there was qualified immunity at this point, and it could come into play at the end, at the fourth stage of the analysis, at summary judgment as well. So even if the defendant says, well, it may be true that we took the medication away from him because we didn't like him and we didn't think – we didn't want to coddle him, but we have rules to justify it. So as long as they have the rules, does that remove the element of deliberate indifference? As long as they have – not in this case, no, Your Honor, because there was contravening rules which said they had to give the prescribed dosage at the prescribed time. And there's nothing in the policy to say which one controls. So we have a vague and ambiguous policy. Well, it's a policy that would be an invalid policy, a reason for finding qualified immunity anyway. I mean, if you have a policy, but it's – would be an invalid policy, and anybody would know it's an invalid policy. Correct. Is a – this is a substantial question. I mean, is a subordinate official, say, somebody who isn't running the jail but is a lesser official, entitled to rely on the policy even if it's an invalid policy or for qualified immunity purposes or not? I don't think it's entitled to rely on a policy like that. A jail policy cannot control the definition of cruel and unusual punishment under the Eighth Amendment, lest we run into a slippery slope where obedient prison officials are routinely torturing plaintiffs and relying on jail policy to justify their actions. Well, the jail policy would still come into play once the case goes to trial for the jury to determine whether it's limited. Absolutely. And that's the point I was trying to get. Yeah, absolutely. It would definitely come in at the fourth stage of the analysis. And the plaintiff would be entitled to get the trial at this stage. The plaintiff would be entitled to get the trial at this stage because I don't believe that this ambiguous jail policy is enough to say that no reasonable jury could fine for the plaintiff in this case. I see that my time is up. I'll turn the podium over to my colleague and reserve anything else for rebuttal. Okay. Thank you, Mr. Khattoubi. Mr. Erblin, welcome to Seattle. Thank you very much. Members of the court and counsel, I represent the officers of Bonner County who are the defendants in this case. They are entitled to qualified immunity on these facts. We agree that as a broad proposition, that somebody's Eighth Amendment rights should not be violated, their right to be free from cruel and unusual punishment. The Supreme Court and this circuit recognize that an analysis of qualified immunity overlaid atop of a constitutional right must be made in a specific factual context. There's a lot of case law, a surprising amount, actually, that suggests that not giving medication, when you know what the person's medical problem is and when you have the doctor who's prescribed a remedy for it, and if you don't follow it, that is likely to be a constitutional violation. So what's reasonable about not giving the person medication in the middle of the night? In response to that question, and that's exactly the point I was going to make, is that the outright denial of medication, as Judge Schwarzer says, what's your most closely analogous case, the outright denial of medication may be proof of deliberate indifference, but that isn't what happened here. Here we have the administration of medication four times a day, and factually specific analysis shows that from January 31 to February 9th, which is nine days, Mr. Pruitt was administered this pain medication four times a day. Now, if they had followed the prescription as argued by counsel, which would be four, every four hours as needed, it doesn't say around the clock, it says every four hours as needed, that is six times. I thought there was one point at which the doctor, to clarify, said around the clock. That would be Dr. Russ, but the original, from January to February, Dr. Russ did not. Fine, fine, but eventually he did, and he still didn't do it. He did. And that eventually, that was April 4th to May 1, that's 26 days where Mr. Pruitt was administered the pain medication four times a day as opposed to six. So that's not an outright denial of medication. You had a doctor saying that he needed it all the time, and you had him saying that he was in bad pain as a result of not getting it, and I don't see the difference. I mean, why is it okay if one-third of the time he's in terrible pain and against the specific directions of the doctor? Well, and I think that in hindsight, certainly I, as an advocate, would rather they had administered it every four hours. They did not. The question is whether or not that's a constitutional violation, but I agree with you, Judge Berzon, that perhaps if a doctor says every four hours as needed, then you should get up in the middle of the night or have somebody there in the middle of the night that administers medication. Did not occur here. The jail policy administers medication at 7, 12, 5, and 9, and does not administer medication at 9. So is your argument that it was constitutional to do that or is your argument that I can see three possible arguments. One, it was constitutional to do that because it was only a third of the time. The second is that it was not constitutional, but that it was reasonable to think it was for some reason. Or third, that the subordinate officers didn't have to worry about whether it was constitutional or not because it was jail policy and all they had to do was follow the jail policy. The court below found that there was no constitutional violation. We agree that there was. However, following your second point, Judge Berzon, the question on qualified immunity is whether or not the officer, it was patently violative of a constitutional right or whether there was a clearly established constitutional right of what a reasonable officer would have known. And it's our position that the officer would not have known that it was constitutionally necessary to administer medication at 4 o'clock in the morning, that gap between 9 and 7. Well, didn't the officer know that it had been prescribed by the doctor? Isn't that enough? Yes, Judge, the officer did. So he knew that and he knew so that he could know there was a serious medical need. He knew that there was a medical need for this patient, for this prisoner. Yes. And then there is some other facts in this case that are alleged by way of affidavit that suggests that there was a deliberate effort to withhold medication and other. I see. I see those affidavits are in the record. So that doesn't that raise the question as to whether the officers were acting in a fashion that they had reason to think was not consistent with the Constitution? If we accept the affidavits as true. Well, for purposes of the motion, they may they may be impeached at trial and all of this voted whether there's a violation, in fact, at the trial. But for purposes of qualified immunity, we have to accept those affidavits. I think we do. But I don't believe, Judge Schwartzer, that the the intent on the part of the officer to withhold medication to inflict pain has an effect on the on the qualified immunity defense because it doesn't. That bear on whether it's objectively reasonable to withhold the medication. If it was objectively reasonable to withhold the medication, that's that has to do with his subjective intent. I think the question is whether or not there is a closely analogous case that would allow an officer to withhold medication after having administered it four times a day as opposed to six. Also, you say there has to be a case that with a specific facts before you can hold the officer. I do not. But I want to point out that the cases cited by counsel are the outright denial or withholding of medical treatment or medication, which did not occur in this case. Estelle itself said that it was unconstitutional, deliberate, indifferent to potentially interfere with treatment once prescribed. They did that here. In other words, there's no qualification in the cases that said it's OK to do it, you know, one third of the time, but not the other two thirds of the time. The cases have the qualification that you're suggesting. The only cases that I've been able to find, and I believe the cases also cited by counsel, are the outright withholding of medication. And counsel cited some of those in his brief. But that, of course, is a question of how you look at it. They were outright withholding the medication from for eight hours a day. So it's just a question of what cut you take at the facts. You certainly could, Your Honor, and I agree, because the medical – the policy is to prescribe medication, deliver medication at 7 o'clock and also at 12. There's five hours. So arguably, if we view this in its most technical sense, there is a one-hour violation right there. The question is whether or not that arises to a constitutional violation, whether it should be deliberate, indifferent. Kagan. And the question is why anybody reading the case law that was extant at the time would not think it was – when the statements are general and there is no qualification in the statements, as I understand it, that says that it matters if it's only half and some of the time, would think that there's such a qualification. Why would they think that? I didn't want to. Why would – in reading the case as extant in 1999, would a reasonable officer think that withholding medication on direct doctor's orders is okay as long as it doesn't happen all the time? Where would he get that from? Well, simply because my response is that there is no directly analogous case that refers to providing medication four times a day as opposed to six times a day. And this is pain medication. Not that I – that I take any delight or anyone takes any delight in somebody else's pain, Your Honor. But this is not life – a life-threatening situation or a situation – an emergency or a situation where if you don't administer the medication, such as in the case of Sadovai Counsel, there is going to be an increase of his medical condition. In that regard, could you briefly address the physical therapy equipment? Because there – there is an allegation that there was a serious impediment to his recovery in which he necessitated surgery and so on. I understand that there is some general assertion that there was a security problem. But I guess I don't know what this equipment is, so I'm having a hard time understanding what the security problem is. There actually is an affidavit of Officer Day, who was in charge of the jail at the time, in which – and it's in the record – in which he asserts that he was concerned with safety of the other inmates and also of other officers if these pulleys and therabands were made available to Mr. Cooley. What are they? Are they – I mean, I don't know if it says in the record what are they. I – I – theraband sounds like something soft. Is that not right? Well, the record doesn't show. I mean, I don't personally know what they are. We can talk about that. But they – the pulleys, obviously, are a device that have a cord on them that are available that somebody could use, I imagine, in some sort of a sensible weapon. Of course, we know that some of the most benign part of this would use these weapons. But he alleged that he had a nurse and he had somebody who was willing – he was paying a nurse, as it was. He was willing to have this nurse supervise it. He was willing to have them do it in some other location. He was using them anyway in the hospital, so if he was going to hurt somebody, he could hurt somebody there. So I'm wondering whether, at least as a summary judgment matter, the – their statement that there was a security problem is sufficient. Well, and – Because here, as to this, there were very specific allegations that there was an interference with his recovery and so on. In that – in that sense, there was an affidavit or there's a report, but it's not – it's not an affidavit. And it's unverified from a physical therapist that the inability to use the TheraVans and the pulleys was delaying the increase in the range of the motion that the doctor was looking for. Consulting in surgery. True. But it – there's no verified medical evidence that this delay in using these pulleys increased the likelihood of him having this capsulitis, which the doctor had to treat him for in any event, because that's where the wound had occurred. I see that I'm out of time, and there is one last question I did not answer, and I'd be glad to answer it if I could. Go ahead. You – you may answer it. And that is the question on jail policy, and I think that was the third prong of Judge Berzon's question. And whether or not adherence to a jail policy, if it's patently – well, if it is reasonable on its face, allows an officer to claim qualified immunity. And I'd simply like to quickly point out that Bonner County itself has not been sued, as a defendant in this case, on Monell liability. And so that analysis is not available to us, and that claim is not available to Mr. Pruitt. Arguably, if the policy itself was unconstitutional, and yet the officer followed it, because that was his policy, then the officer is entitled to qualified immunity. The entity itself might not escape Monell liability as an unconstitutional policy or procedure, but that's not in this case. Thank you very much. Very good. Thank you, sir. All right. Mr. Gattubi, we were probably over time, but we said we'd give you a minute or two for rebuttal. One minute would be fine, Your Honor. I would like to pick up on one very important point here. We can't forget that, yes, this was just pain medication. But in pain medication, it's very different from something like antibiotics or something like that. With pain medication, a delay in receiving it is, in effect, a denial in receiving it. Pain medication doesn't help a long-term recovery. It's meant to apply only for a four-hour period. There, a delay of ten hours is, in effect, an outright denial of that medication. How do you answer the last argument that was made by Mr. Erblin for his clients, that even if a policy is wrong, delimited to four times a day, that the correction officials who follow the policy should have immunity? We have to look at this in a specific paradigm provided by Saucier. Saucier limited this inquiry to whether it was reasonable for an officer to rely upon it. However, the policy is inherently incoherent. It says you have to adhere to doctor's orders. At the same time, you have to follow this policy. That does not give an officer an objectively reasonable basis to rely upon it in actually violating the Eighth Amendment in this case. Judge Berzon, you were absolutely right. The case law nationwide here is overwhelming in favor of plaintiffs, that the denial of medication is an Eighth Amendment violation. The failure to properly treat pain when it can be easily alleviated and is known to defendants is tantamount to the willful infliction of pain, indeed, the core concern of the Eighth Amendment. I'd like to end there, unless the panel has any other questions. Thank you very much. Thank you. Pruitt versus Roos et al. shall be submitted. Thank counsel for their fine arguments. We also thank each of you for traveling to Seattle for the argument. We will now recess for 15 minutes.
judges: Gould, Berzon Schwarzer